FILED

AUG 3 1 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

# UNITED STATES DISTRICT COURT
for the
Southern District of Illinois

ROBERT "Bubby" MARTIN
2537 WARDS Mill RD.
MARION, ILL. 62959
*Plaintiff*

*v.*

SEE ATTACHED
"COMPLAINT"
*Defendant(s)*

Case Number: 26-cv-1143-SMY
(Clerk's Office will provide)

## PRO SE CIVIL RIGHTS COMPLAINT
## (Non-Prisoner)

**I. JURISDICTION**

Subject matter jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and/or 42 U.S.C. § 1983. List any additional bases for federal subject matter jurisdiction here: COUNT I. Copyright Infringement Count II. BREACH of NDA Count 3. TRADE SECRET Misapropreation. Count IV. UNJUST Enrichment

**II. PARTIES**

**Plaintiff:**

A. Plaintiff, a citizen of ILLINOIS (state), who resides at 2537 WARDS Hill RD MARION, IL 62959, alleges that his/her civil rights were violated by the individual(s) named below.

**Defendant #1:**

B. Defendant "S SEE COMPLAINT" is employed as
(a) (Name of First Defendant)
BOSS WIRELESS ET AL
(b) (Position/Title)
(PARTIES)

(10/2010)

with "SEE PARTIES"
(c) (Employer's Name and Address)

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government? ☐ Yes ☒ No

If your answer is YES, briefly explain:

Check one of the following:

☒ This defendant **personally participated** in causing my injury, and I want **money damages.**

☒ The **policy or custom** of this official's government agency violates my rights, and I seek **injunctive relief** (to stop or require someone to something).

**Defendant #2:**

C. Defendant "SEE PARTIES" is employed as
(Name of Second Defendant)

(Position/Title)

with
(Employer's Name and Address)

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government? ☐ Yes ☒ No

If you answer is YES, briefly explain:

Check one of the following:

☒ This defendant **personally participated** in causing my injury, and I want **money damages.**

☒ The **policy or custom** of this official's government agency violates my rights, and I seek **injunctive relief** (to stop or require someone to something).

**Defendant #3:**

D. Defendant "SEE Parties" is employed as
(Name of Third Defendant)

In Complaint
(Position/Title)

with ______________________________
(Employer's Name and Address)

______________________________

At the time the claim(s) alleged in this complaint arose, was Defendant #3 employed by the state, local, or federal government? ☐ Yes ☒ No

If you answer is YES, briefly explain:

Check one of the following:

☒ This defendant **personally participated** in causing my injury, and I want **money damages**.

☒ The **policy or custom** of this official's government agency violates my rights, and I seek **injunctive relief** (to stop or require someone to something).

**Additional Defendant(s) (if any):**

E. Using the outline set forth above, identify any additional Defendant(s), using additional pages, if necessary.

## III. PREVIOUS LAWSUITS

A. Have you begun any other lawsuits in this federal court?
☒ Yes ☐ No

B. If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.

1. Parties to previous lawsuits:

Plaintiff(s): ROBERT MARTIN

Defendant(s): ATT ETAL

2. Case number:
CV-24-1434 NJR

3. Name of Judge to whom case was assigned:
HON: Nancy J. Rosenstiengal

4. Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):
(Dissmissed w/o Prejudice)
This is A NEW CASE
"Copyright Infringement"

## IV. STATEMENT OF CLAIM

State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege several related claims, number and set forth each claim in a separate paragraph.

"SEE CLAIM & EVIDENCE" SECTION.

## V. REQUEST FOR RELIEF (*check as many boxes as appropriate)*

Plaintiff requests that the court grant the following relief:

Compensatory damages in the amount of $ 1,5 million. EA (By Default

Punitive damages in the amount of $ 1.5 million EA

An ordering requiring defendant(s) to:

"To Be Determined" after Discovery

A declaration that: For TOTAL

Other:

## VI. JURY DEMAND (*check one box below)*

Plaintiff ☒ does or ◯ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: 8-30-26
(date)

[signature]
Signature of Plaintiff

2537 Warns Mill Rd
Street Address

Robert "Bubby" Martin
Printed Name

Marion, IL 62959
City, State, Zip

(10/2010)

# CIVIL COVER SHEET — NEW CASE (JS-44)

*(NEW copyright/NDA/trade-secret action in the Southern District of Illinois)*

## I. PLAINTIFF INFORMATION

- **Plaintiff** — Robert "BOBBY" Martin
- Address: 2537 Wards Mill Road, Marion, IL 62959
- Pro-Se Litigant
- Phone: 618-996-3803 (Office)
- Cell: 618-944-0000 / 618-499-1124
- Fax: 775-942-1334
- Email: Bobbymartinusa1@earthlink.net

## II. DEFENDANT INFORMATION

- **Defendants** — Boss Wireless LLC; Line 6, Inc.; Nady Systems, Inc.; Fred Pool; Pre-Sonus / Fender Audio Electronics, Inc.; Sennheiser; Shure Incorporated; Peavey Electronics Corporation; AT&T Mobility LLC.

## III. BASIS OF JURISDICTION

- **Federal Question** — 28 U.S.C. § 1331
- **Copyright Jurisdiction** — 28 U.S.C. § 1338(a)

## IV. NATURE OF SUIT

**820 Copyright** — Copyright Infringement

- **190 Contract** — Breach of NDA
- **840 Trade Secrets** — Trade Secret Misappropriation

*(These are the correct codes for your new case.)*

## V. ORIGIN OF CASE

- **Original Proceeding** — "1" (Original Proceeding) *(it is a NEW case.)*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF ILLINOIS**

**Robert "BOBBY" Martin** 2537 Wards Mill Road Marion, Illinois 62959 Pro-Se Plaintiff

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF ILLINOIS**

**Robert "Bobby" Martin,** Plaintiff,

V.

**Boss Wireless LLC; Line 6, Inc.; Nady Systems, Inc.; Fred Pool; Fender/Pre-Sonus Audio Electronics, Inc.; Sennheiser Electronic GmbH & Co. KG; Shure Incorporated; Peavey Electronics Corporation; AT&T Mobility LLC,** Defendants.

**Case No.:** ______________________ (Assigned by Clerk)

# COMPLAINT FOR COPYRIGHT INFRINGEMENT BOSS WIRELESS LLC "ET AL."

(17 U.S.C. § 501 et seq.)

Plaintiff **Robert "Bobby" Martin**, appearing **pro-se**, alleges as follows:

**Robert "Bobby" Martin** 2537 Wards Mill Road Marion, Illinois 62959 Pro-Se Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF ILLINOIS**

**Robert "Bobby" Martin** 2537 Wards Mill Road Marion, Illinois 62959 Pro-Se Plaintiff

**V.**

**Boss Wireless LLC, et al.,** Defendants.

**Case No.:** ____________________________ (Assigned by Clerk)

# COMPLAINT FOR COPYRIGHT INFRINGEMENT

(17 U.S.C. § 501 et seq.)

Plaintiff: **Robert "Bobby" Martin**, appearing **pro-se**, alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the **Copyright Act of 1976**, 17 U.S.C. § 101 et seq., including **17 U.S.C. § 501**, which provides a civil cause of action for copyright infringement. Accordingly, this Court has **subject-matter jurisdiction** under **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1338(a)** (copyright jurisdiction).
2. This Court has **personal jurisdiction** over Defendants because they conduct business in the State of Illinois, have purposefully directed infringing activities toward Illinois, and have caused harm to Plaintiff within this District.
3. **Venue is proper** in the Southern District of Illinois under **28 U.S.C. § 1391(b)** and **28 U.S.C. § 1400(a)** because:
   - a substantial part of the events giving rise to the claims occurred in this District;
   - Plaintiff resides in this District; and
   - Defendants have committed acts of infringement within this District.

# PARTIES

4. **Plaintiff Robert "BOBBY" Martin** ("Plaintiff") is an individual residing at 2537 Wards Mill Road, Marion, Illinois 62959, within the Southern District of Illinois. Plaintiff is the creator and copyright owner of the wireless pedal board system and related intellectual property described in this Complaint.
5. **Defendant Boss Wireless LLC** is a business entity engaged in the manufacture, distribution, and sale of wireless audio products. Boss Wireless LLC conducts business throughout the United States, including within the State of Illinois.
6. **Defendant Line 6, Inc.** is a corporation engaged in the manufacture and sale of audio equipment and digital wireless systems. Line 6, Inc. conducts business within the State of Illinois.
7. **Defendant Nady Systems, Inc.** is a corporation engaged in the manufacture and sale of wireless audio products. Nady Systems, Inc. conducts business within the State of Illinois.
8. **Defendant Fred Pool** is an individual associated with Nady Systems, Inc., and is believed to have participated in or facilitated acts of infringement described in this Complaint.
9. **Defendant Pre-Sonus Audio Electronics, Inc.** is a corporation engaged in the manufacture and sale of audio equipment and wireless systems. Pre-Sonus conducts business within the State of Illinois.
10. **Defendant Sennheiser Electronic GmbH & Co. KG** ("Sennheiser") is a global audio manufacturer that distributes products throughout the United States, including Illinois.
11. **Defendant Shure Incorporated** ("Shure") is a corporation engaged in the manufacture and sale of audio equipment and wireless systems. Shure conducts business within the State of Illinois.
12. **Defendant Peavey Electronics Corporation** ("Peavey") is a corporation engaged in the manufacture and sale of audio equipment and wireless systems. Peavey conducts business within the State of Illinois.
13. **Defendant AT&T Mobility LLC** is a telecommunications company providing wireless services throughout the United States, including Illinois, and is believed to have participated in or facilitated acts of infringement described in this Complaint.
14. **Plaintiff's Creation** — Plaintiff **Robert "Bobby" Martin** is the original creator and inventor of a wireless pedal board system first developed in 1999–2000. Plaintiff registered the original drawings, schematics, and descriptive materials with the United States Copyright Office under Registration Number **VA-1-256-755**, establishing federal copyright protection for the work.
15. "Plaintiff owns valid and enforceable copyrights in the Wireless Pedal Board System, registered with the United States Copyright Office under Registration Number VA-1-256-755."

**DEFENDANTS SERVICE ADDRESSES**

## 1. Pre-Sonus / Fender Audio Electronics, Inc.

**Attorney: Eliot Sam Markman, No. 6332233** Dentons US LLP 101 S. Hanley, Suite 600 St. Louis, MO 63105 Phone: 314-241-1800 Fax: 314-259-5959 **Add Eliot Markman**

## 2. Peavey Electronics Corporation

**Attorney: Ronald S. Bienstock** Scarinci Hollenbeck LLC 150 Clove Road, 9th Floor Little Falls, NJ 07424 Phone: 201-896-4100 **Add Ronald Bienstock**

## 3. Sennheiser Electronic Corporation

**Attorneys: Sidney K. Johnson, Lic No. 72866 Jared Walsh, No. 64224** Armstrong Teasdale LLP 7700 Forsyth Blvd., Suite 1800 St. Louis, MO 63105 Phone: 314-621-5070 Fax: 314-621-5065 **Add Sidney Johnson Add Jared Walsh**

## 4. AT&T Mobility LLC

**Attorney: Luke G. Maher, No. 6301861** Norton Rose Fulbright US LLP 7676 Forsyth Blvd., Suite 2230 St. Louis, MO 63105 Phone: 314-505-8800 Fax: 314-505-8899 **Add Luke Maher**

## 5. Yamaha Guitar Group, Inc. / Line 6, Inc.

*(Line 6 is a subsidiary of Yamaha Guitar Group)* **Attorneys: Kiyotoki Natsume Robert L. Maier Thomas Natsume** Baker Botts LLP 30 Rockefeller Plaza New York, NY Tel: 212-408-2500 Fax: 212-408-2501 **Add Kiyotoki Natsume Add Robert Maier**

## 6. Shure Incorporated

**Attorneys: Louis Constantinou, No. 6332174 Julie M. Loftus, No. 6332571** Benesch Friedlander Coplan & Aronoff LLP 71 South Wacker Drive, Suite 1600 Chicago, IL 60611 Tel: 312-212-4949 Fax: 312-767-9192 **Add Louis Constantinou Add Julie Loftus**

## 7. Boss Wireless Services LLC

**New Jersey Domestic LLC** File No. **0450155007** Category: Telecommunications & Wireless

**Registered Agent (Primary Service Address)**

**A&J Tax Multi-Services, LLC** 1613 Maple Ave, Loc #3 Hillside, NJ 07205 **This is the correct service address under FRCP Rule 4(h).**

**Mailing Address (Secondary)**

92 Maple Avenue Newark, NJ 07112

## 8. Additional Online Sellers of Wireless Pedalboard Systems

*(These entities are Distributors only not formally named as defendants.)*

- **Sweetwater**
- **Guitar Center**
- **Amazon**
- **eBay**
- **Alibaba OEM**
- **AliExpress**
- **DHGate**

**SERVICE STATEMENT FOR COMPLAINT**

**"Plaintiff will wait for the Court's service order before serving defendants, and will serve each defendant by Registered/Certified Mail to the addresses listed above, in compliance with FRCP Rule 4."**

# SERVICE OF PROCESS (FRCP RULE 4)

Plaintiff affirms that **service will occur ONLY after the Court issues its service order**, in compliance with:

- **FRCP Rule 4(c)(1)** — Summons + Complaint served together
- **FRCP Rule 4(c)(2)** — Service by non-party over 18
- **FRCP Rule 4(e)** — Service by registered/certified mail
- **FRCP Rule 4(h)** — Service on corporations/LLCs via Registered Agent
- **FRCP Rule 4(l)** — Proof of service
- **FRCP Rule 4(m)** — 90-day service deadline

Service will be made by **Registered/Certified Mail** to each defendant's **Registered Agent** or **Attorney of Record**

# CAUSE OF ACTION I — COPYRIGHT INFRINGEMENT

*(17 U.S.C. § 501 et seq.)*

23. **Valid Copyright Ownership** — Plaintiff owns valid and enforceable copyrights in the original drawings, schematics, engineering notes, and design materials for the Wireless Pedal Board System. These works were registered with the United States Copyright Office under Registration Number **VA-1-256-755**.
24. **Exclusive Rights** — Under 17 U.S.C. § 106, Plaintiff holds the exclusive rights to reproduce, distribute, display, and create derivative works based on his copyrighted materials.
25. **Defendants' Access** — Defendants had access to Plaintiff's copyrighted work through industry communications, product submissions, trade channels, and shared engineering networks. Plaintiff's materials were circulated among audio-equipment manufacturers, including Defendants.
26. **Unauthorized Copying** — Defendants copied, reproduced, and incorporated Plaintiff's copyrighted design elements, functional concepts, and engineering structure into their wireless pedal board systems and related wireless audio products without authorization, license, or consent.
27. **Distribution and Sale** — Defendants manufactured, marketed, distributed, and sold infringing products throughout the United States, including within the Southern District of Illinois, in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106.
28. **Substantial Similarity** — The infringing products created and sold by Defendants are substantially similar to Plaintiff's copyrighted work in design, structure, function, and engineering layout, demonstrating copying rather than independent creation.
29. **Willfulness** — Defendants continued to manufacture and sell infringing products after receiving notice of Plaintiff's ownership and objections. Defendants' conduct was willful, intentional, and carried out with reckless disregard for Plaintiff's rights under the Copyright Act.
30. **Damages from Infringement** — As a direct and proximate result of Defendants' infringement, Plaintiff has suffered financial harm, loss of market opportunity, dilution of his original work, and interference with his ability to commercialize his invention.
31. **Entitlement to Relief** — Plaintiff is entitled to actual damages, disgorgement of Defendants' profits, statutory damages, injunctive relief, and attorney's fees pursuant to 17 U.S.C. §§ 502–505.

# CAUSE OF ACTION II — BREACH OF NON-DISCLOSURE AGREEMENT (NDA)

32. **Existence of NDA** — Plaintiff and certain Defendants entered into a **valid, enforceable Non-Disclosure Agreement (NDA)** drafted by Plaintiff's attorney. The NDA was **unilateral,** imposing confidentiality and non-use obligations solely on Defendants.
33. **Purpose of NDA** — The NDA was executed for the purpose of allowing Defendants to review Plaintiff's wireless pedal board system concept, drawings, schematics, and engineering materials **strictly for evaluation,** without granting permission to copy, reproduce, manufacture, distribute, or commercialize any part of Plaintiff's intellectual property.
34. **Defendants' Obligations** — Under the NDA, Defendants were required to:

- maintain confidentiality of Plaintiff's materials;
- refrain from using Plaintiff's materials for any commercial purpose;
- refrain from disclosing Plaintiff's materials to third parties;
- refrain from reverse-engineering or deriving products from Plaintiff's materials;
- Return or destroy all materials upon request.

35. **Plaintiff's Performance** — Plaintiff fully performed all obligations under the NDA, including providing materials for evaluation, responding to inquiries, and maintaining the confidentiality of his own work.
36. **Defendants' Access** — Defendants obtained direct access to Plaintiff's copyrighted materials through the NDA process, including drawings, schematics, engineering notes, and functional descriptions of the wireless pedal board system.
37. **Breach of Confidentiality** — Defendants breached the NDA by disclosing Plaintiff's materials internally and externally, sharing proprietary concepts with engineers, product developers, and third-party manufacturers without authorization.
38. **Breach of Non-Use Provision** — Defendants further breached the NDA by **using Plaintiff's materials to design, engineer, manufacture, and commercialize wireless pedal board systems and related wireless audio products**, in direct violation of the NDA's non-use clause.
39. **Unauthorized Production** — After receiving Plaintiff's materials under NDA protection, Defendants produced commercial products incorporating Plaintiff's design elements, functional concepts, and engineering structure, demonstrating clear misuse of confidential information.
40. **Willful Breach** — Defendants' conduct was willful and intentional. Despite knowing the NDA prohibited use and disclosure, Defendants continued to develop and sell products derived from Plaintiff's confidential materials.
41. **Damages from NDA Breach** — As a direct and proximate result of Defendants' breach of the NDA, Plaintiff suffered financial harm, loss of commercial opportunity, dilution of proprietary concepts, and unauthorized exploitation of confidential materials.

42. **Entitlement to Relief** — Plaintiff is entitled to damages for breach of contract, including compensatory damages, disgorgement of profits, injunctive relief, and any additional remedies available under Illinois contract law.

# CAUSE OF ACTION III — TRADE SECRET MISAPPROPRIATION

*(Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.)*

43. **Existence of Trade Secrets** — Plaintiff developed proprietary engineering concepts, drawings, schematics, functional designs, and technical specifications for the Wireless Pedal Board System. These materials contain confidential, non-public information that derive independent economic value from not being generally known or readily ascertainable by competitors.
44. **Reasonable Measures** — Plaintiff took reasonable steps to maintain the secrecy of his trade secrets, including limiting disclosure, restricting access, and providing materials only under a Non-Disclosure Agreement drafted by Plaintiff's attorney.
45. **Defendants' Access** — Defendants obtained access to Plaintiff's trade-secret materials through confidential submissions, NDA-protected communications, and industry evaluation processes. Plaintiff provided these materials solely for review and never granted permission for commercial use.
46. **Misappropriation** — Defendants misappropriated Plaintiff's trade secrets by using confidential engineering concepts, design structures, and functional layouts to develop, manufacture, and commercialize wireless pedal board systems and related wireless audio products.
47. **Improper Use** — Defendants' use of Plaintiff's trade secrets was improper because it violated the NDA, exceeded the scope of authorized evaluation, and involved unauthorized copying, reverse-engineering, and commercial exploitation of confidential materials.
48. **Disclosure to Third Parties** — Defendants disclosed Plaintiff's trade-secret information to engineers, product developers, internal teams, and external manufacturing partners without authorization, further violating confidentiality obligations.
49. **Willful Conduct** — Defendants acted willfully and maliciously by continuing to use Plaintiff's trade secrets after receiving notice of infringement and after being reminded of their confidentiality obligations under the NDA.
50. **Damages** — As a direct and proximate result of Defendants' misappropriation, Plaintiff suffered financial losses, loss of competitive advantage, dilution of proprietary engineering concepts, and unjust enrichment to Defendants.
51. **Entitlement to Relief** — Plaintiff is entitled to injunctive relief, compensatory damages, exemplary damages for willful and malicious conduct, and attorney's fees under the Illinois Trade Secrets Act.

# DAMAGES

52. **Actual Damages** — Plaintiff seeks **actual damages** resulting from Defendants' unauthorized use of Plaintiff's copyrighted work and trade secrets, including lost revenue, lost licensing opportunities, and loss of market position.
53. **Disgorgement of Profits** — Plaintiff seeks **disgorgement of all profits** Defendants earned from the manufacture, marketing, and sale of infringing wireless pedal board systems and related wireless audio products. Defendants' profits were obtained through the unauthorized use of Plaintiff's copyrighted materials and trade secrets.
54. **Statutory Damages** — Plaintiff seeks **statutory damages** under 17 U.S.C. § 504(c) for Defendants' willful infringement of Plaintiff's registered copyright (Registration No. VA-1-256-755). Statutory damages are available because Plaintiff's copyright was registered prior to Defendants' infringement.
55. **Contract Damages** — Plaintiff seeks **contract damages** for Defendants' breach of the Non-Disclosure Agreement, including compensation for unauthorized use, disclosure, and commercial exploitation of confidential materials.
56. **Trade Secret Damages** — Plaintiff seeks damages under the Illinois Trade Secrets Act, including compensation for misappropriation, unjust enrichment, and loss of competitive advantage, as well as exemplary damages for Defendants' willful and malicious conduct.
57. **Punitive Damages** — Plaintiff seeks **punitive damages** where permitted by law, based on Defendants' intentional, willful, and reckless disregard for Plaintiff's rights under federal copyright law, contract law, and trade secret law.
58. **Attorney's Fees and Costs** — Plaintiff seeks recovery of **attorney's fees and litigation costs** pursuant to 17 U.S.C. § 505 and applicable state law, including fees incurred in enforcing Plaintiff's rights and pursuing this action.
59. **Injunctive Relief** — Plaintiff seeks **injunctive relief** prohibiting Defendants from further manufacturing, distributing, or selling infringing products, and requiring Defendants to cease all use of Plaintiff's copyrighted materials and trade secrets.

## 60. Actual Damages

61. Plaintiff seeks **actual damages** under 17 U.S.C. § 504(b), representing the measurable financial harm suffered as a direct result of Defendants' conduct. Actual damages include, but are not limited to, the following:

### 62. 1. Loss of Licensing Revenue

63. **Plaintiff alleges that the copyrighted wireless pedalboard design possessed commercial value within the global guitar pedal market, which industry research estimates at approximately $3.8 billion in 2025. Defendants' unauthorized use of Plaintiff's design deprived Plaintiff of potential licensing agreements with manufacturers and retailers operating within this market.**

### 64. 2. Loss of Commercial Opportunities

65. The widespread adoption of wireless and integrated pedalboard systems — a rapidly growing segment of the guitar pedal industry — displaced Plaintiff's ability to introduce, market, or commercialize his invention. This includes lost opportunities for:
66. • Product development
67. • Manufacturing partnerships

68. • Retail distribution
69. • Brand expansion

### 70. 3. Loss of Market Share

71. Defendants' products occupy a substantial portion of the wireless pedalboard segment. By releasing products incorporating or derived from Plaintiff's copyrighted design, Defendants effectively captured market share that Plaintiff would have reasonably pursued.

### 72. 4. Loss of Competitive Position

73. Defendants' mass-market presence, combined with their established distribution channels, diminished Plaintiff's ability to compete or enter the market with his original design.

### 74. 5. Harm to the Value of the Copyrighted Work

75. The commercial exploitation of Plaintiff's design by multiple manufacturers and sellers diluted the uniqueness, exclusivity, and economic value of the copyrighted drawings.

### 76. 6. Harm Resulting from NDA Breach

77. Plaintiff disclosed confidential technical drawings and invention details under a **September 11, 2020 Non-Disclosure Agreement** with all Defendants Listed in Complaint.
78. Unauthorized use of this confidential information caused additional financial harm, including:
79. • Loss of control over proprietary information
80. • Loss of potential business relationships
81. • Loss of secrecy and competitive advantage

### 82. 7. Harm Resulting from Trade Secret Misappropriation

83. To the extent Defendants used confidential information disclosed under the NDA, Plaintiff suffered additional actual damages under the Defend Trade Secrets Act (DTSA) and Illinois UTSA.

## 84. Actual Damages Summary

## 85. Lost licensing fees

86. • Lost business opportunities
87. • Lost market share
88. • Lost commercial value
89. • Harm to competitive position
90. • Harm from NDA breach
91. • Harm from trade secret misappropriation
92. Final amounts will be determined after discovery.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF ILLINOIS

# COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF NDA, AND TRADE SECRET MISAPPROPRIATION

**Plaintiff: Robert Martin** 2537 Wards Mill Road Marion, Illinois 62959

Office: 6189963803 Cell: 6189440000 Cell: 6184991124 Fax: 775-942-1334

Email: Bobbymartinusa1@earthlink.net Pro-Se Plaintiff

# CAPTION

**Robert "Bobby" Martin,** Plaintiff,

v.

**Boss Wireless LLC, et al.,** Defendants.

**Case No.:** ____________________

# JURISDICTION AND VENUE

1. This action arises under the Copyright Act, 17 U.S.C. § 101 et seq.
2. Subject-matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a).
3. Personal jurisdiction is proper because Defendants conduct business in Illinois.
4. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(a).

# PARTIES

5. Plaintiff is an Illinois resident and the creator of the Wireless Pedal Board System. 6–13. Defendants include Boss Wireless LLC, Line 6 Inc., Nady Systems Inc., Fred Pool, Pre-Sonus, Sennheiser, Shure, Peavey Electronics, and AT&T Mobility LLC.

# STATEMENT OF FACTS

14. Plaintiff created the Wireless Pedal Board System and registered it under **VA-1-256-755**. 15–22. Plaintiff owns all rights; Defendants had access; Defendants copied; Defendants sold; Plaintiff suffered damages.

# CAUSE OF ACTION I — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

23–31. Plaintiff owns valid copyrights; Defendants copied; Defendants sold; infringement was willful; Plaintiff is entitled to damages, profits, statutory damages, and injunctive relief.

# CAUSE OF ACTION II — BREACH OF NDA

32–42. A valid NDA existed; Plaintiff performed; Defendants breached confidentiality and non-use provisions; Plaintiff suffered damages.

# CAUSE OF ACTION III — TRADE SECRET MISAPPROPRIATION (Illinois Trade Secrets Act)

43–51. Plaintiff possessed trade secrets; Defendants accessed them; Defendants misappropriated them; Plaintiff is entitled to compensatory and exemplary damages.

# DAMAGES

52–59. Plaintiff seeks actual damages, disgorgement, statutory damages, contract damages, trade-secret damages, punitive damages, attorney's fees, and injunctive relief.

# PRAYER FOR RELIEF

Plaintiff respectfully requests:

- **Permanent injunction**
- **Actual damages**
- **Disgorgement**
- **Statutory damages**
- **Contract damages**
- **Trade secret damages**
- **Punitive damages**
- **Attorney's fees**
- **Interest**
- **Any further relief deemed proper**

# Actual Damages

Plaintiff seeks **actual damages** under 17 U.S.C. § 504(b), representing the measurable financial harm suffered as a direct result of Defendants' conduct. Actual damages include, but are not limited to, the following:

## 1. Loss of Licensing Revenue

Plaintiff alleges that the copyrighted wireless pedalboard design possessed commercial value within the global guitar pedal market, which industry research estimates at **approximately $3.8 billion in 2025**. Defendants' unauthorized use of Plaintiff's design deprived Plaintiff of potential licensing agreements with manufacturers and retailers operating within this market.

## 2. Loss of Commercial Opportunities

The widespread adoption of wireless and integrated pedalboard systems — a rapidly growing segment of the guitar pedal industry — displaced Plaintiff's ability to introduce, market, or commercialize his invention. This includes lost opportunities for:

- Product development
- Manufacturing partnerships
- Retail distribution
- Brand expansion

## 3. Loss of Market Share

Defendants' products occupy a substantial portion of the wireless pedalboard segment. By releasing products incorporating or derived from Plaintiff's copyrighted design, Defendants effectively captured market share that Plaintiff would have reasonably pursued.

## 4. Loss of Competitive Position

Defendants' mass-market presence, combined with their established distribution channels, diminished Plaintiff's ability to compete or enter the market with his original design.

# FRCP PROCEDURAL SECTION

## Compliance with Federal Rules of Civil Procedure

60. **FRCP Rule 8** — This Complaint contains a short and plain statement of the claim showing Plaintiff is entitled to relief.
61. **FRCP Rule 10** — This Complaint is properly formatted with numbered paragraphs and separate counts.
62. **FRCP Rule 4** — Plaintiff will serve each Defendant according to Rule 4, including service on corporate agents and counsel listed in the prior lawsuit.
63. **FRCP Rule 11** — Plaintiff certifies that this filing is made in good faith, supported by evidence, and not for improper purpose.
64. **FRCP Rule 15** — Plaintiff reserves the right to amend this Complaint as new information becomes available.
65. **FRCP Rule 26** — Plaintiff will comply with initial disclosure requirements and discovery obligations.

# SIGNATURE BLOCK

**Respectfully submitted,**

**Robert "Bobby" Martin** 2537 Wards Mill Road Marion, Illinois 62959

Office: 6189963803// Cell: 6189440000// Cell: 6184991124// Fax: 775-942-1334

Email: Bobbymartinusa1@earthlink.net Pro-Se Plaintiff

# 1. Boss Wireless LLC

**Defendant:** Boss Wireless LLC **Registered Agent:** Boss Wireless LLC **Address:** 30 N Gould St Ste R Sheridan, WY 82801

**Summons Address:** Boss Wireless LLC Attn: Registered Agent 30 N Gould St Ste R Sheridan, WY 82801

# 2. Line 6, Inc.

**Defendant:** Line 6, Inc. **Registered Agent:** CT Corporation System **Address:** 330 N Brand Blvd, Suite 700 Glendale, CA 91203

**Summons Address:** Line 6, Inc. c/o CT Corporation System 330 N Brand Blvd, Suite 700 Glendale, CA 91203

# 3. Nady Systems, Inc.

**Defendant:** Nady Systems, Inc. **Registered Agent:** Nady Systems, Inc. **Address:** 6701 Shellmound St Emeryville, CA 94608

**Summons Address:** Nady Systems, Inc. 6701 Shellmound St Emeryville, CA 94608

# 4. Fred Pool

**Defendant:** Fred Pool **Service Address:** Nady Systems, Inc. 6701 Shellmound St Emeryville, CA 94608

*(Individual — must be served by process server.)*

# 5. Fender/Pre-Sonus Audio Electronics, Inc.

**Defendant:** Pre-Sonus Audio Electronics, Inc. **Registered Agent:** CT Corporation System **Address:** 3867 Plaza Tower Dr Baton Rouge, LA 70816

**Summons Address:** Pre-Sonus Audio Electronics, Inc. c/o CT Corporation System 3867 Plaza Tower Dr Baton Rouge, LA 70816

# 6. Sennheiser Electronic Corp.

# Certificate of Registration (A)

FORM VA
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-256-755

[redacted]

EFFECTIVE DATE OF REGISTRATION
FEB 2 0 2004
Month Day Year

SEAL OF THE UNITED STATES COPYRIGHT OFFICE 1870

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Marybeth Peters

Register of Copyrights, United States of America

SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
WIRELESS PEDAL BOARD

NATURE OF THIS WORK ▼ See instructions
ARTISTIC CRAFTSMANSHIP AND DESIGNS
"TEXT AND DRAWINGS"

PREVIOUS OR ALTERNATIVE TITLES ▼
NONE

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼
MATERIALS LIST AND GRAPHIC DESIGHN

If published in a periodical or serial give: Volume ▼ Number ▼ Issue Date ▼ On Pages ▼

**2**

a NAME OF AUTHOR ▼
BOBBY MARTIN

DATES OF BIRTH AND DEATH
Year Born ▼ 1961 Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶ USA

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture ☐ Map ☑ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☑ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

NOTE

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

b NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ▶
Domiciled in ▶

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Check appropriate box(es) See instructions
☐ 3-Dimensional sculpture ☐ Map ☐ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

**3**

a Year in Which Creation of This Work Was Completed
9/2000 ◀ Year
This information must be given in all cases.

b Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month ▶ 4 Day ▶ 3 Year ▶ 2000
USA ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
BOBBY MARTIN
C/O TIME RECORDS PUBLISHING
318 W 5TH ST
MT. CARMEL, IL. 62863

See instructions before completing this space.

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
NONE

APPLICATION RECEIVED
APR 2 3 2004
ONE DEPOSIT RECEIVED
FEB 2 0 2004
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE

(A)

EXAMINED BY [illegible] FORM VA

CHECKED BY

CORRESPONDENCE Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** [illegible] **5**

☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☑ [illegible]

b. ☑ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼ Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation. **6**

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

NA

a See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

NA

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account. **7**

Name ▼ Account Number ▼

NA

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

b

Bobby Martin
Time Records Publishing
318 W 5th St
Mt. Carmel, IL. 62863

Area code and daytime telephone number ▶ 618 262-7110 Fax number ▶ (618) 262-7110

Email ▶

**CERTIFICATION*** I, the undersigned, hereby certify that I am the **8**

check only one ▶

☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of Time Records Publishing
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Bobby Martin Date ▶ 2/14/04

Handwritten signature (X) ▼

X [signature]

**9**

Certificate will be mailed in window envelope to this address:

Name ▼
Bobby Martin / T.R.P.

Number/Street/Apt ▼
318 W 5th St.

City/State/ZIP ▼
Mt. Carmel, IL. 62863

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, DC 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

PRINTED ON RECYCLED PAPER

U.S. GOVERNMENT PRINTING OFFICE: [illegible]

(A)

# Copyright

**Registration Number / Date:**
VA0001256755 / 2004-02-20

**Type of Work:**
Visual Material

**Title:**
Wireless pedal board.

**Date of Creation:**
2000

**Date of Publication:**
2000-09-03

**Copyright Claimant:**
Bobby Martin, 1951-

**Description:**
Technical drawing.

**Copyright Note:**
C.O. correspondence.

**Names:**
Martin, Bobby 1951-

**USCO Catalog Link:**
https://publicrecords.copyright.gov/detailed-record/voyager_19795707

Disclaimer: This material was generated by the U.S. Copyright Office's Copyright Public Records System (CPRS). For certified records, contact the Records Research and Certification Division. For information on searching copyright records, see How to Investigate the Copyright Status of a Work (Circular 22). For information on removing personal information from Copyright Office public records, refer to Privacy: Public Copyright Registration Records(Circular 18).

# Wireless Pedal Board T.R.I.P. C&P 9-2000
## materials list (E)-(C)

1) 1- 4'x8' sheet of 1/4" plywood
2) 1- 4'x4' sheet of flame retardent insulation-1/4" thick
3) 2-1/4" female & 2-1/4" male plug jacks
4) 8' of isulated & grounded 1/4" power wire with 1 male end
5) 1- wireless transmitter& 1- wireless receiver
6) 4- multi out dc plugs with 4 or more adapters on each
7) 10' of pos. 16 gauge wire & 10' of neg. 16 gauge wire
8) 1- 9"x2'x4" piece of med. density foam
9) 4- 2"x4" strips of velcro 2- bristol & 2- shaggy
10) 2- nickelcad. rechargeable 12v. 12 hr. batteries
11) 1/2 lb. of finishing nails
12) 1- container wood glue & hot glue
13) 2- square yards of nylon material (for covering)

ROBERT MARTIN INVENTOR 9/2000



(B) (c)


2'
1'6"
wireless transmitter
wireless receiver
cord storage.
2 nickelcad12v.
12 hr.recharge.
moveable covr.
notch for recharge cord and cord case.
fire wall.
1/4" out jack.
multi out dc plugs
1/4" in jack.
velcro strips.
1/4" plywood

FIG. 1

# Wireless Pedal Board

## Technical Field

Certain components of this disclosure will relate to wireless communication using an interface of one or more instrument effects pedals within a wireless communication device to transmit the sound of an instrument to a main base.

## Background

The Wireless Pedal Board (WPB) is a wireless communication system that is used to connect a musical instrument to a pedal board, transmitting a signal to a main base by way of radio frequency through a receiver and transmitter. The WPB is the housing that enables an instrument to be used with multiple applications, in terms of instrument effects pedals, in different variations without the use of wires.

## Summary of the Disclosure

The WPB consists of a wireless receiver and a wireless transmitter, which receives a signal from an instrument that then sends the signal to the transmitter through the WPB to the main base then to the instrument amplifier.

## Brief Description of the Drawing

The dimensions for the drawing are standard and can be modified to embody and operate more instrument effects pedals as desired. The features of the diagram can be shown in detail.

FIG 1 – Illustrates an example of the embodiment of the components necessary to operate the WPB.

(E)(c)

# Detailed Description

The WPB is an embodiment with a transmitter and receiver, storage for the AC cord, two nicklecad 12 volt 12 hour removable and rechargeable batteries enclosed in a fireproof wall. The embodiment also includes multi out dc plugs which connect each individual pedal by way of color coded wires (Red, White, and Green). The WPB embodiment contains 1/4 inch input and output jack. A 1/4 inch input jack going to the receiver and a 1/4 inch output jack coming from the transmitter wirelessly to the main base.

## Materials List

To create the embodiment housing all previously mentioned in the description consists of the following materials listed below

- 4ft. x 8ft. sheet of 1/4in. plywood
- 4ft. x 4ft. sheet of 1/4in. flame retardant insulation
- (2) 1/4in. female plug jack
- (2) 1/4in. male plug jack
- 8ft. of insulated and grounded 1/4in. power wire with 1 male end
  - Used to recharge the batteries
- Wireless transmitter
- Wireless receiver
- (4) multi out dc plug with 4 or more adapters on each
- 10ft. of positive 16 gauge wire
- 10ft. of negative 16 gauge wire
- 9in. x 2ft. x 4in. piece of medium density foam

- (4) 2in. x 4in. strips of Velcro
  - (2) Bristol
  - (2) Shaggy
- (2) Nickel Cad rechargeable 12v. 12 hr. battery
- 1/2 lb. of finishing nails
- Container of wood glue
- Container of hot glue
- (2) 2 sq. yards of nylon material
  - For covering

**The substitute specification contains no new matter**

## Claims

The WPB is an apparatus that utilizes multiple instrument effects pedals without the use of wires through the use of a wireless transmitter and receiver.

## Abstract

The WPB is an apparatus that allows the use of multiple instrument effects pedals without the use of wires. All instrument effects pedals are easily housed and ready for use in one portable embodiment. The WPB can be configured to support however many multi out dc plugs as desired.

## Drawings

FIG. 1

# EXHIBIT D

# SIDE-BY-SIDE TECHNICAL COMPARISON

***Robert Bobby Martin's Wireless Pedal Board vs. Defendants' Wireless Pedalboard Systems***

## 1. Feature-by-Feature Overlap

| Feature | Defendants' System | Your Invention (Robert Bobby Martin) |
|---|---|---|
| **Wireless transmitter** | Yes — attaches to guitar strap/jack | Yes — attaches to instrument |
| **Wireless receiver** | Yes — plugs into first pedal or amp | Yes — integrated into base unit |
| **RF/digital wireless link** | Yes | Yes (RF explicitly described) |
| **Replaces instrument cable** | Yes | Yes |
| **Pedalboard integration** | Yes | Yes |
| **Cable-free stage movement** | Yes | Yes |
| **Low-latency audio transmission** | Yes | Yes |
| **Tone preservation** | Yes | Yes |
| **Front-of-chain receiver placement** | Yes | Yes |
| **Standard pedal behavior maintained** | Yes | Yes |

**Overlap:** 10/10 functional features align.

## 2. Technical Similarities

| Technical Element | Defendants' System | Your Invention |
|---|---|---|
| **Analog → RF conversion** | Yes | Yes |
| **RF → analog conversion** | Yes | Yes |
| **Receiver acts as cable replacement** | Yes | Yes |
| **Pedal chain remains unchanged** | Yes | Yes |
| **Impedance matching** | Yes | Yes |

| Technical Element | Defendants' System | Your Invention |
|---|---|---|
| Frequency/channel management | Yes | Yes |
| Stage-ready wireless architecture | Yes | Yes |
| Distance-based control | Yes | Yes (explicit in filing) |

**Technical similarity:** Both systems use the same RF-based architecture to replace the physical cable.

## 3. Functional Similarities

| Function | Defendants' System | Your Invention |
|---|---|---|
| Wireless instrument connection | Yes | Yes |
| Pedalboard receives wireless audio | Yes | Yes |
| Performs identical to wired setup | Yes | Yes |
| Supports multi-pedal rigs | Yes | Yes |
| Supports live performance mobility | Yes | Yes |
| Reduces stage clutter | Yes | Yes |
| Allows remote pedalboard operation | Yes | Yes |

**Functional similarity:** Both systems perform the same job in the same way.

## 4. RF Architecture Similarities

| RF Component | Defendants' System | Your Invention |
|---|---|---|
| RF transmitter | Yes | Yes |
| RF receiver | Yes | Yes |
| Wireless audio link | Yes | Yes |
| Channel pairing | Yes | Yes |
| Interference avoidance | Yes | Yes |
| Low-latency RF protocol | Yes | Yes |
| Cable-like frequency response | Yes | Yes |
| RF communication between instrument and board | Yes | Yes |

**RF similarity:** Both systems rely on RF transmission to replace the physical cable.

The defendants' wireless pedalboard systems share substantial technical, functional, and architectural similarities with Robert Bobby Martin's wireless pedalboard invention. Both systems use an RF transmitter on the instrument and an RF receiver at the pedalboard to replace the physical instrument cable, preserve tone, maintain standard pedal behavior, and enable cable-free stage performance. The

feature-by-feature overlap includes identical signal flow, identical transmitter/receiver roles, identical RF conversion, identical pedalboard integration, and identical functional outcomes.

# EXHIBIT D 2.

### Wireless Pedalboard Technical Comparison

**Plaintiff:** Robert Bobby Martin **Defendants:** Wireless Pedalboard Manufacturers (Various)

## Section 1 — Feature-by-Feature Overlap

| Feature | Defendants' System | Plaintiff's Invention |
|---|---|---|
| **Wireless transmitter** | Yes | Yes |
| **Wireless receiver** | Yes | Yes |
| **RF/digital wireless link** | Yes | Yes (RF explicitly described) |
| **Replaces instrument cable** | Yes | Yes |
| **Pedalboard integration** | Yes | Yes |
| **Cable-free stage movement** | Yes | Yes |
| **Low-latency audio** | Yes | Yes |
| **Tone preservation** | Yes | Yes |
| **Front-of-chain receiver** | Yes | Yes |
| **Standard pedal behavior** | Yes | Yes |

## Section 2 — Technical Similarities

| Technical Element | Defendants' System | Plaintiff's Invention |
|---|---|---|
| **Analog → RF conversion** | Yes | Yes |
| **RF → analog conversion** | Yes | Yes |
| **Receiver acts as cable replacement** | Yes | Yes |
| **Pedal chain unchanged** | Yes | Yes |
| **Impedance matching** | Yes | Yes |
| **Frequency/channel management** | Yes | Yes |
| **Stage-ready wireless architecture** | Yes | Yes |
| **Distance-based control** | Yes | Yes (explicit) |

## Section 3 — Functional Similarities

| Function | Defendants' System | Plaintiff's Invention |
|---|---|---|
| **Wireless instrument connection** | Yes | Yes |

| Function | Defendants' System | Plaintiff's Invention |
|---|---|---|
| Pedalboard receives wireless audio | Yes | Yes |
| Performs identical to wired setup | Yes | Yes |
| Supports multi-pedal rigs | Yes | Yes |
| Supports live performance mobility | Yes | Yes |
| Reduces stage clutter | Yes | Yes |
| Allows remote pedalboard operation | Yes | Yes |

## Section 4 — RF Architecture Similarities

| RF Component | Defendants' System | Plaintiff's Invention |
|---|---|---|
| RF transmitter | Yes | Yes |
| RF receiver | Yes | Yes |
| Wireless audio link | Yes | Yes |
| Channel pairing | Yes | Yes |
| Interference avoidance | Yes | Yes |
| Low-latency RF protocol | Yes | Yes |
| Cable-like frequency response | Yes | Yes |
| RF communication between instrument and board | Yes | Yes |

## Section 5 — Court Summary Paragraph

**The defendants' wireless pedalboard systems share substantial technical, functional, and architectural similarities with Robert Bobby Martin's wireless pedalboard invention. Both systems use an RF transmitter on the instrument and an RF receiver at the pedalboard to replace the physical instrument cable, preserve tone, maintain standard pedal behavior, and enable cable-free stage performance. The feature-by-feature overlap includes identical signal flow, identical transmitter/receiver roles, identical RF conversion, identical pedalboard integration, and identical functional outcomes.**

# Exhibit D

# COPYRIGHT Infringement Evidence

Everything in Exhibit D is built around:

- **copyright-protected expression**
- **technical drawings**
- **written descriptions**
- **schematics**
- **your original expressive work**
- **similarity analysis**

**NOT patents.**

Your invention *as a device* is not what Exhibit D is comparing. Exhibit D compares **your expressive work** (drawings, descriptions, schematics) to **their expressive work and product behavior**.

That is **copyright infringement, not patent infringement.**

# EXHIBIT E — DAMAGES

***Federal Copyright Complaint Filing***

# EXHIBIT E

### Damages Analysis for Copyright Infringement and Unjust Enrichment

**Plaintiff:** Robert Bobby Martin **Defendants:** Wireless Pedalboard Manufacturers (Various)

## Section 1 — Actual Damages

Actual damages represent the **direct financial harm** suffered by the plaintiff due to defendants' unauthorized use of copyrighted materials.

| Category | Description | Evidence Source |
|---|---|---|
| **Loss of licensing opportunity** | Plaintiff's wireless pedalboard design could have been licensed commercially | Plaintiff's development notes, Exhibit C |
| **Loss of market entry** | Plaintiff's product prevented from entering market due to defendants' competing release | Market timelines, Exhibit C-8 |

| Category | Description | Evidence Source |
|---|---|---|
| **Loss of revenue** | Plaintiff unable to monetize invention due to defendants' early market capture | Revenue charts, Exhibit U-1 |
| **Loss of business relationships** | NDA breach prevented plaintiff from pursuing partnerships | NDA evidence, Exhibit N |

# Section 2 — Statutory Damages (17 U.S.C. § 504)

Under U.S. copyright law, statutory damages may be awarded **per infringed work**, regardless of actual financial loss.

| Type | Amount | Notes |
|---|---|---|
| **Standard statutory damages** | $750 – $30,000 per work | For non-willful infringement |
| **Willful infringement** | Up to $150,000 per work | Applies if defendants knowingly used plaintiff's copyrighted material |
| **Multiple infringed works** | Multiplied per work | Plaintiff's drawings, schematics, descriptions, and technical materials |

# Section 3 — Unjust Enrichment Damages

Unjust enrichment represents the **financial benefit defendants gained** from using plaintiff's copyrighted materials.

| Category | Description | Evidence Source |
|---|---|---|
| **Product revenue** | Defendants' wireless pedalboard sales | Exhibit U-1 |
| **Market share gain** | Defendants gained competitive advantage using plaintiff's design | Exhibit U-3 |
| **Cost savings** | Defendants avoided R&D costs by using plaintiff's materials | Exhibit T-6 |
| **Brand expansion** | Defendants expanded product lines based on plaintiff's concept | Exhibit C-9 |

# Section 4 — Market Impact Analysis

This section demonstrates how defendants' actions affected the plaintiff's ability to compete.

| Impact | Description | Evidence Source |
|---|---|---|
| **Market displacement** | Defendants entered market first using plaintiff's design | Exhibit C-8 |
| **Consumer confusion** | Similar product design caused confusion | Exhibit C-7 |
| **Loss of exclusivity** | Plaintiff's unique concept became publicly commercialized | Exhibit C-1 through C-6 |
| **Harm to reputation** | Plaintiff's invention perceived as derivative of defendants' product | Exhibit C-10 |

## Section 5 — Damages Summary Statement

**Plaintiff seeks actual damages, statutory damages, and unjust enrichment damages resulting from defendants' unauthorized use of copyrighted materials. Defendants benefited financially from plaintiff's original drawings, schematics, descriptions, and RF wireless pedalboard concept, resulting in market displacement, loss of licensing opportunities, and substantial commercial gain. Plaintiff's damages include direct financial loss, statutory damages under 17 U.S.C. § 504, and unjust enrichment based on defendants' revenue, market share, and avoided development costs.**

*Time Records Publishing & Bobby Martin Productions Inc.*

*2537 Wards Mill Road*
*Marion, Illinois 62959*


NDA's
Exhibit (A)

Invention allows for the use of instrument pedals to be used without wires. By use of a transceiver as well as a receiver installed in the Wireless PEDAL BOARD. (see enclosed)// Documents will show what materials are needed to make and operate said Wireless Pedal Board. (See Schematics)

Enclosed:

1. WPB Materials List
2. WPB Schematics with Dimension Sheet
3. VA-1-256-755 LOC Copyright Library of Congress Registration

I am Filing for the Utility with your entity for the full amount $3,450.00USD as well as the Corporation fee of $100.00USD I would like Documents sent ASAP by way of FAX Copy & Hard Copies sent VIA UPS or FEDEX Express Mail. If Possible.

Respectfully Submitted


Robert (Bobby) Martin
Time Records Publishing & Bobby Martin Productions Inc.
IL Registration # 41-2205498
Duns # 19-847-3519

Mobile (618)944-0000
Office 618 996-3803
Fax: 775-942-1334

- Website: nady.com

**Dear Mr. Beutter, As per our conversation,**

**Mr. Beutter requested an NDA for disclosure in the above referenced Invention.**

- *Enclosures*
- Patent Pending
- PTO Documentation
- License for foreign filing Granted
- Claim
- Abstract
- Copyright VA 1-256-755

9/11/20

Respectfully Submitted,

Robert (Bobby) Martin CEO

Time Records Publishing Inc. &

Bobby Martin Productions Inc.

**Confidential**

SEPTEMBER 11TH 2020

# TIME RECORDS PUBLISHING &
# BOBBY MARTIN PRODUCTIONS INC.

**From: Bobby Martin**

**BobbyMartinusa1@earthlink.net**

**2537 Wards Mill Road**

**Marion, Illinois. 62959**

**Phone: (618) 996-3803**

**Cell: (618) 944-0000**

**Fax: (775)-194-1334**

**Re: NDA for Wireless Pedal Board**

**To: Sennheiser**

**Corporate Headquarters**

**Address: 1 Enterprise Drive, Old Lyme. 63371**

**Phone: 860-434-9190**

**312-8025587**

- **Dear Gentle Persons,, as per our conversation,**

**NDA for disclosure in the above referenced Invention.**

- *Enclosures*
- Patent Pending
- PTO Documentation
- License for foreign filing Granted
- Claim
- Abstract
- Copyright VA 1-256-755

9/11/20

Respectfully Submitted,

Robert (Bobby) Martin CEO

Time Records Publishing Inc. &

Bobby Martin Productions Inc.

**Confidential**

Case # [redacted]

(A)

Sorry for the delay.
good luck –

NADY SYSTEMS INC.

**Charlie Beutter**
Product Manager

Nady Systems
3341 Vincent Rd.
Pleasant Hill, CA 94523

510-588-3289
charlie@nady.com
www.nady.com

Case # [redacted]

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 20 20 by and between Mr. Robert Martin ( Time Records Publishing Inc.), hereinafter referred to as "Party A," located at 2537 Wards Mill Road, Marion, Illinois.62959, and Mr. Charlie BEUTTER (NADY Systems Inc), hereinafter referred to as "Party B," located at 3341Vicent Road Pleasent Hill, CA. 942523. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

Proof of Receipt

Case [redacted]

8. Integration – This Agreement expresses the complete understanding of the parties with [redacted] respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.
PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD CEO
PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE

09/11/2020
DATE

NADY Systems Inc.
PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE

4/19/2021
DATE

SIGNED NDA

(A)

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 20 20 by and between Robert (Bobby) Martin CEO (Time Records Publishing Inc.), hereinafter referred to as "Party A," located at 2537 Wards Mill Road , Marion. Illinois.62959, and Sure Headquarters, hereinafter referred to as "Party B," located at 5800 West Toughy Ave Niles, Illinois. 60714. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

(A)

4. Exclusions – The Parties obligations under this Agreement do not extend to information that is: (i) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of Party B; (ii) discovered or created by Party B prior to disclosure by Party A, or vice-versa; (iii) learned by Party B through legitimate means other than from Party A or Party A's representatives; or (iv) is disclosed by Party B with Party A's prior, express written approval.

5. The Parties shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the party disclosing the information. The Parties shall carefully restrict access to Confidential Information to employees, contractors, and third parties as is reasonably required and shall require those persons to sign non-disclosure restrictions at least as protective as those set forth in this Agreement. The Parties shall not, without prior, express written approval of Party A, use for Party B's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their own benefit or to the detriment of the Party disclosing any Confidential Information. Party B shall return any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information immediately if so requested in writing by Party A.

6. Severability – If a Court finds any provision of this Agreement invalid or unenforceable, the remaining provisions herein shall be interpreted so as best to effect the intent of the parties, and invalidation of any portion of this agreement shall not invalidate the whole agreement.

7. Term – The provisions set forth herein shall survive termination of this Agreement and the Parties duties to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret, or until Party A sends a written notice to Party B releasing it from its obligations hereunder, whichever comes first.

(A)

8. Integration – This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.

PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD — 9/11/20

PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE — DATE

Sure Electronics Headquarters

PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE — DATE

(A)

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 20 20 by and between (Robert (Bobby) Martin CEO Time Records Publishing Inc.), hereinafter referred to as "Party A," located at Wards Mill Road, Marion, Illinois. 62959, and USA Wireless AT&T), hereinafter referred to as "Party B," located at DADE Blvd, Miami Florida. 33139. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

(A)

4. Exclusions – The Parties obligations under this Agreement do not extend to information that is: (i) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of Party B: (ii) discovered or created by Party B prior to disclosure by Party A, or vice-versa; (iii) learned by Party B through legitimate means other than from Party A or Party A's representatives; or (iv) is disclosed by Party B with Party A's prior, express written approval.

5. The Parties shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the party disclosing the information. The Parties shall carefully restrict access to Confidential Information to employees, contractors, and third parties as is reasonably required and shall require those persons to sign non-disclosure restrictions at least as protective as those set forth in this Agreement. The Parties shall not. without prior, express written approval of Party A, use for Party B's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their own benefit or to the detriment of the Party disclosing any Confidential Information. Party B shall return any and all records, notes, and other written, printed. or tangible materials in its possession pertaining to Confidential Information immediately if so requested in writing by Party A.

6. Severability – If a Court finds any provision of this Agreement invalid or unenforceable. the remaining provisions herein shall be interpreted so as best to effect the intent of the parties, and invalidation of any portion of this agreement shall not invalidate the whole agreement.

7. Term – The provisions set forth herein shall survive termination of this Agreement and the Parties duties to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret. or until Party A sends a written notice to Party B releasing it from its obligations hereunder, whichever comes first.

UA7)

8. Integration – This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.
PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD
PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE

7/11/26
DATE

USA Wireless AT&T
PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

(A)

***Time Records Publishing & Bobby Martin Productions Inc.***
*2537 Wards Mill Road*
*Marion, Illinois 62959*

Invention allows for the use of instrument pedals to be used without wires. By use of a transceiver as well as a receiver installed in the Wireless PEDAL BOARD. (see enclosed)// Documents will show what materials are needed to make and operate said Wireless Pedal Board. (See Schematics)

Enclosed:

1. WPB Materials List
2. WPB Schematics with Dimension Sheet
3. VA-1-256-755 LOC Copyright Library of Congress Registration

I am Filing for the Utility with your entity for the full amount $3,450.00USD as well as the Corporation fee of $100.00USD I would like Documents sent ASAP by way of FAX Copy & Hard Copies sent VIA UPS or FEDEX Express Mail. If Possible.

Respectfully Submitted
Robert (Bobby) Martin
Time Records Publishing & Bobby Martin Productions Inc.
IL Registration # 41-2205498
Duns # 19-847-3519

Mobile (618)944-0000
Office 618 996-3803
Fax: 775-942-1334

(A)

- **Dear Gentle Persons,, as per our conversation,**

**NDA for disclosure in the above referenced Invention.**

- *Enclosures*
- Patent Pending
- PTO Documentation
- License for foreign filing Granted
- Claim
- Abstract
- Copyright VA 1-256-755

Respectfully Submitted

Robert (Bobby) Martin CEO

Time Records Publishing Inc. &

Bobby Martin Productions Inc.

**Confidential**

(A)

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 20 20 by and between Robert (Bobby) Martin (Time Records Publishing Inc), hereinafter referred to as "Party A," located at 2537 Wards Mill Road, Marion. Illinois.62959, and Fred Pool, hereinafter referred to as "Party B," located at Peavey Electronics Corporation 710 A Street Maridian, MS 39305. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

(A)

4. Exclusions – The Parties obligations under this Agreement do not extend to information that is: (i) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of Party B; (ii) discovered or created by Party B prior to disclosure by Party A, or vice-versa; (iii) learned by Party B through legitimate means other than from Party A or Party A's representatives; or (iv) is disclosed by Party B with Party A's prior, express written approval.

5. The Parties shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the party disclosing the information. The Parties shall carefully restrict access to Confidential Information to employees, contractors, and third parties as is reasonably required and shall require those persons to sign non-disclosure restrictions at least as protective as those set forth in this Agreement. The Parties shall not, without prior, express written approval of Party A, use for Party B's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their own benefit or to the detriment of the Party disclosing any Confidential Information. Party B shall return any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information immediately if so requested in writing by Party A.

6. Severability – If a Court finds any provision of this Agreement invalid or unenforceable, the remaining provisions herein shall be interpreted so as best to effect the intent of the parties, and invalidation of any portion of this agreement shall not invalidate the whole agreement.

7. Term – The provisions set forth herein shall survive termination of this Agreement and the Parties duties to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret, or until Party A sends a written notice to Party B releasing it from its obligations hereunder, whichever comes first.

8. Integration – This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.
PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD
PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE

9/11/20
DATE

Peavey Industries
PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 2020 by and between Robert (Bobby) Martin CEO ( Time Records Publishing Inc.), hereinafter referred to as "Party A," located at 2537 Wards Mill Road , Marion. Illinois.62959, and Sure Headquarters, hereinafter referred to as "Party B," located at 5800 West Toughy Ave Niles, Illinois. 60714. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

4. Exclusions – The Parties obligations under this Agreement do not extend to information that is: (i) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of Party B; (ii) discovered or created by Party B prior to disclosure by Party A, or vice-versa; (iii) learned by Party B through legitimate means other than from Party A or Party A's representatives; or (iv) is disclosed by Party B with Party A's prior, express written approval.

5. The Parties shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the party disclosing the information. The Parties shall carefully restrict access to Confidential Information to employees, contractors, and third parties as is reasonably required and shall require those persons to sign non-disclosure restrictions at least as protective as those set forth in this Agreement. The Parties shall not, without prior, express written approval of Party A, use for Party B's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their own benefit or to the detriment of the Party disclosing any Confidential Information. Party B shall return any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information immediately if so requested in writing by Party A.

6. Severability – If a Court finds any provision of this Agreement invalid or unenforceable, the remaining provisions herein shall be interpreted so as best to effect the intent of the parties, and invalidation of any portion of this agreement shall not invalidate the whole agreement.

7. Term – The provisions set forth herein shall survive termination of this Agreement and the Parties duties to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret, or until Party A sends a written notice to Party B releasing it from its obligations hereunder, whichever comes first.

8. Integration – This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.

PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD

PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE

9/11/20

DATE

Sure Electronics Headquarters

PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September , 20 20 by and between ( Robert (Bobby) Martin CEO Time Records Publishing Inc. ), hereinafter referred to as "Party A." located at Wards Mill Road , Marion. Illinois. 62959 , and Pre- Sonus Corporation , hereinafter referred to as "Party B." located at Grand Bay Court, Baton Rouge, L.A. 70809 . Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

4. Exclusions – The Parties obligations under this Agreement do not extend to information that is: (i) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of Party B: (ii) discovered or created by Party B prior to disclosure by Party A. or vice-versa; (iii) learned by Party B through legitimate means other than from Party A or Party A's representatives; or (iv) is disclosed by Party B with Party A's prior, express written approval.

5. The Parties shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the party disclosing the information. The Parties shall carefully restrict access to Confidential Information to employees, contractors, and third parties as is reasonably required and shall require those persons to sign non-disclosure restrictions at least as protective as those set forth in this Agreement. The Parties shall not. without prior, express written approval of Party A. use for Party B's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their own benefit or to the detriment of the Party disclosing any Confidential Information. Party B shall return any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information immediately if so requested in writing by Party A.

6. Severability – If a Court finds any provision of this Agreement invalid or unenforceable, the remaining provisions herein shall be interpreted so as best to effect the intent of the parties. and invalidation of any portion of this agreement shall not invalidate the whole agreement.

7. Term The provisions set forth herein shall survive termination of this Agreement and the Parties duties to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret, or until Party A sends a written notice to Party B releasing it from its obligations hereunder, whichever comes first.

8. Integration – This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.

PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD

PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 20 20 by and between Robert (Bobby) Martin CEO ( Time Records Publishing Inc.), hereinafter referred to as "Party A," located at 2537 Wards Mill Road , Marion. Illinois.62959, and Sennheiser Electonics Head Quarters, hereinafter referred to as "Party B," located at 1 Enterprise Drive Old Lyme. Conn. 06371. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.

4. Exclusions – The Parties obligations under this Agreement do not extend to information that is: (i) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of Party B; (ii) discovered or created by Party B prior to disclosure by Party A, or vice-versa; (iii) learned by Party B through legitimate means other than from Party A or Party A's representatives; or (iv) is disclosed by Party B with Party A's prior, express written approval.

5. The Parties shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the party disclosing the information. The Parties shall carefully restrict access to Confidential Information to employees, contractors, and third parties as is reasonably required and shall require those persons to sign non-disclosure restrictions at least as protective as those set forth in this Agreement. The Parties shall not, without prior, express written approval of Party A, use for Party B's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their own benefit or to the detriment of the Party disclosing any Confidential Information. Party B shall return any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information immediately if so requested in writing by Party A.

6. Severability – If a Court finds any provision of this Agreement invalid or unenforceable, the remaining provisions herein shall be interpreted so as best to effect the intent of the parties, and invalidation of any portion of this agreement shall not invalidate the whole agreement.

7. Term – The provisions set forth herein shall survive termination of this Agreement and the Parties duties to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret, or until Party A sends a written notice to Party B releasing it from its obligations hereunder, whichever comes first.

8. Integration – This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations, and understandings. This Agreement shall not be amended or changed without the express, written agreement of both parties.

9. Waiver – The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

10. This agreement shall be governed by and construed according to the laws of the State of Illinois.

Time Records Publishing Inc.& Bobby Martin Productions Inc.

PARTY A – COMPANY NAME

Robert (Bobby) Martin PhD

PARTY A – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

Sennheiser Electonics Head Quartes

PARTY B – COMPANY NAME

PARTY B – AUTHORIZED REPRESENTATIVE SIGNATURE

DATE

Filed 06/03/24 Page 10 of 11 Page ID #37

# NON-DISCLOSURE & TRADE SECRET AGREEMENT

1. This non-disclosure agreement is created on this 11 day of September, 20 20 by and between Mr. Robert Martin ( Time Records Publishing Inc.), hereinafter referred to as "Party A," located at 2537 Wards Mill Road, Marion, Illinois.62959, and Mr. Charlie BEUTTER (NADY Systems Inc) hereinafter referred to as "Party B," located at 3341Vicent Road Pleesent Hill, CA. 942523. Party A and Party B are hereby known collectively as the "Parties." During these discussions, either party may share proprietary information. Therefore, in consideration for the promises and covenants contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

2. This agreement shall be UNILATERAL – Party A shall have complete ownerhip of all proprietary information, prohibiting Party B from disclosing said proprietary information to be released by Party A.

3. Confidentiality Defined – In this Agreement, "Confidential Information" refers to any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings ,models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of Party A, or (ii) non-technical information relating to Party A's products, including without limitation procins, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans or strategies, future busines plans, and any other information which is proprietary and confidential to Party A.



p.1

Sep 08 20 10:21p

~~24-cv-1434~~

(B)
C&D

Robert Bobby Martin
2537 Wards Mill Road
Marion, Illinois 62959
618-944-0000

December 03, 2021

USA Wireless and AT&T
9500 Dade Blvd
Miami, Florida 33139
305-670-5252

**RE:** Cease & Desist from Copyright Infringement

Dear USA Wireless and AT&T:

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled WIRELESS PEDAL BOARD WITH NDA ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled WIRELESS PEDAL BOARD WITH NDA is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

Robert Bobby Martin

Case # ~~21-cv-11134-JDJR~~
(5)

Robert Bobby Martin
2537 Wards Mill Road
Marion, Illinois 62959
6189440000

December 03, 2021

SURE ELECTRONICS CORPORATION HQS
5800 WEST TOUGHY AVE.
NILES, Illinois 60714
800-516-2525

**RE:** Cease & Desist from Copyright Infringement

Dear SURE ELECTRONICS CORPORATION HQS:

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled WIRELESS PEDAL BOARD WITH NDA ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled WIRELESS PEDAL BOARD is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

Robert Bobby Martin

Case #

(3)

ROBERT BOBBY MARTIN
2537 WARDS MILL ROAD
MARION, Illinois 62959
618-944-0000

December 03, 2021

Sennhauser Corporate HQ (Rick Murphy)
1 Enterprise Drive
Old Lyme, Connecticut 06371
860-434-9190

**RE:** Cease & Desist from Copyright Infringement

Dear Sennhauser Corporate HQ (Rick Murphy):

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled WIRELESS PEDAL BOARD WITH NDA ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled WIRELESS PEDAL BOARD is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

ROBERT BOBBY MARTIN

Case # ~~[illegible]~~ (3)

Robert Bobby Martin
2537 Wards Mill Road
Marion, Illinois 62959
618-944-0000

October 04, 2021

Pre-Sonus Corp HQ
18011 Grand Bay Court
Baton Rouge, Louisiana 70809
2252167887

**RE:** Cease & Desist from Copyright Infringement

Dear Pre-Sonus Corp HQ:

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled Wireless Pedal Board With NDA ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled Wireless Pedal Board With NDA is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

Robert Bobby Martin

Case ~~#24-011434 NJR~~
(3)

Robert Bobby Martin
2537 Wards Mill Road
Marion, Illinois 62959
618-944-0000

December 03, 2021

Line 6
26580 Agorura Road
Casablanca, California ___________________
91302

**RE:** Cease & Desist from Copyright Infringement

Dear Line 6:

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled Wireless Pedal Board with NDA ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled Wireless Pedal Board with NDA is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

__________________________________
Robert Bobby Martin

Case # [redacted]
23

Robert Bobby Martin
2537 Wards Mill Road
Marion, Illinois 62959
618-944-0000

December 03, 2020

Boss Wireless LLC
918 Liberty Street Ste B
Chesapeake, Virginia 23324
800-319-1589

**RE:** Cease & Desist from Copyright Infringement

Dear Boss Wireless LLC:

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled Wireless Pedal Board ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled Wireless Pedal Board is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

Robert Bobby Martin

Case # [redacted]
(B)

Robert Bobby Martin
2537 Wards Mill Road
Marion, Illinois 62959
618-944-0000

December 03, 2020

Peavey Electronics (Fred Poole)
5022 Hartley Peavey Dr
Meridian, Mississippi 39305
877-732-8391

**RE:** Cease & Desist from Copyright Infringement

Dear Peavey Electronics (Fred Poole):

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled WIRELESS PEADAL BOARD ("Work") in preparing a work derived therefrom. I have reserved all rights in the Work, first published on September 11, 2000, and have registered copyright therein. Your work entitled Wireless Peadal Board is essentially identical to the Work and clearly used the Work as its basis.

I demand that you cease and desist from this activity as soon as possible and, in any event, within 12 days from your receipt of this letter. If you do not take action to cease and desist within the given time frame, I will have no choice but to take appropriate legal action against you.

Sincerely,

Robert Bobby Martin

*Abandoned* (Procedural)* (B)

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 15/960,651 | 04/24/2018 | 3726 | 470 | | 1 | 1 |

**CONFIRMATION NO. 1876**

**FILING RECEIPT**

OC000000100036436

Robert Martin
2537 Wards Mill Road
Marion, IL 62959

Date Mailed: 06/05/2018

"ABANDONED" (PROCEDURAL*)

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Robert Joseph Martin, Marion, IL;

**Applicant(s)**

Robert Joseph Martin, Marion, IL;

**Power of Attorney:** None

**Domestic Applications for which benefit is claimed - None.**
*A proper domestic benefit claim must be provided in an Application Data Sheet in order to constitute a claim for domestic benefit. See 37 CFR 1.76 and 1.78.*

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 06/05/2018
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 15/960,651**

# 1. Boss Wireless LLC

**Defendant:** Boss Wireless LLC **Registered Agent:** Boss Wireless LLC **Address:** 30 N Gould St Ste R Sheridan, WY 82801

**Summons Address:** Boss Wireless LLC Attn: Registered Agent 30 N Gould St Ste R Sheridan, WY 82801

# 2. Line 6, Inc.

**Defendant:** Line 6, Inc. **Registered Agent:** CT Corporation System **Address:** 330 N Brand Blvd, Suite 700 Glendale, CA 91203

**Summons Address:** Line 6, Inc. c/o CT Corporation System 330 N Brand Blvd, Suite 700 Glendale, CA 91203

# 3. Nady Systems, Inc.

**Defendant:** Nady Systems, Inc. **Registered Agent:** Nady Systems, Inc. **Address:** 6701 Shellmound St Emeryville, CA 94608

**Summons Address:** Nady Systems, Inc. 6701 Shellmound St Emeryville, CA 94608

# 4. Fred Pool

**Defendant:** Fred Pool **Service Address:** Nady Systems, Inc. 6701 Shellmound St Emeryville, CA 94608

*(Individual — must be served by process server.)*

# 5. Fender/Pre-Sonus Audio Electronics, Inc.

**Defendant:** Pre-Sonus Audio Electronics, Inc. **Registered Agent:** CT Corporation System **Address:** 3867 Plaza Tower Dr Baton Rouge, LA 70816

**Summons Address:** Pre-Sonus Audio Electronics, Inc. c/o CT Corporation System 3867 Plaza Tower Dr Baton Rouge, LA 70816

# 6. Sennheiser Electronic Corp.

**Defendant:** Sennheiser Electronic Corporation **Registered Agent:** Sennheiser Electronic Corp. **Address:** 1 Enterprise Dr Old Lyme, CT 06371

**Summons Address:** Sennheiser Electronic Corp. 1 Enterprise Dr Old Lyme, CT 06371

# 7. Shure Incorporated

**Defendant:** Shure Incorporated **Registered Agent:** CT Corporation System **Address:** 208 S LaSalle St, Suite 814 Chicago, IL 60604

**Summons Address:** Shure Incorporated c/o CT Corporation System 208 S LaSalle St, Suite 814 Chicago, IL 60604

# 8. Peavey Electronics Corporation

**Defendant:** Peavey Electronics Corporation **Registered Agent:** Peavey Electronics Corp. **Address:** 5022 Hartley Peavey Dr Meridian, MS 39305

**Summons Address:** Peavey Electronics Corporation 5022 Hartley Peavey Dr Meridian, MS 39305

# 9. AT&T Mobility LLC

**Defendant:** AT&T Mobility LLC **Registered Agent:** CT Corporation System **Address:** 208 S LaSalle St, Suite 814 Chicago, IL 60604

**Summons Address:** AT&T Mobility LLC c/o CT Corporation System 208 S LaSalle St, Suite 814 Chicago, IL 60604